Shaw, C. J.
This is an action of assumpsit on an instru* ment of guaranty, given by the defendant to the plaintiffs, as recited at length in the report.
The instrument does not appear to be dated, unless the 27th of October, 1841, is to be taken as its date. It appears by the report, that the defendant was absent from the country, during the time at which the transaction hereafter stated took place, and the suit was commenced on the 4th of January, 1845. The question is, whether the transactions stated in the report constitute a loan of money to James Haughton and company, or a discount to them, or for their benefit, within the terms of the defendant’s contract of guaranty.
The efficient words of the defendant’s undertaking are, “ that the said James Haughton and company shall punctually pay all and singular any sums of money, which shall become due and payable by reason of any loan or discount, heretofore made, or "which shall be hereafter made, to them, or for their benefit.”
The plaintiffs in their declaration aver a loan or discount made by them to Haughton and company, on the 18th of Tune, 1842, within the time limited by the guaranty, for $4,036, which they afterwards refused to pay, and of which the defendant had due notice.
The question is, whether the transaction of the 18th of June, 1842, set forth in the report, did amount to a loan or discount. The case is submitted on a nonsuit, subject to the opinion of the whole court, upon the question, whether upon the evidence the jury could rightly find a verdict for the plaintiff The evidence is voluminous; coming from Franklin Haven, the president, and Thomas W. Hooper, a teller, of the bank, and from Henry M. Holbrook and James Haughton, called by the defendant. In the statements of these witnesses, there is considerable repetition, and we do not think it necessary to state the testimony in detail.
The facts proved, we think, are, that about the middle of June, 1842, the plaintiffs held several notes, on which Haughton and company were promisors and Mark Healey indorser, which had been discounted by the bank for Healey; and that *464 it became known both to Haven, the president of the bank, and to Haughton, that Healey was about to fail. These notes had been signed by Haughton and company, made payable to their own order, indorsed by themselves and by Healey, as accommodation notes, or notes for which Healey had given notes of corresponding date and amount in exchange. Before Healey’s failure became public, Haughton and Haven had an interview, at which Haughton was desirous of knowing, whether Healey’s failure would prevent Haughton and company from having their usual accommodation at the Merchants bank; Haven told him it would not, if. Haughton and company could give assurances, that they were able to go on and meet their debts, and expected to do so ; and Haughton told him, that they had promises of assistance and such means, that they expected to get through and meet their payments without failing. The notes spoken of, which became due at different times, amounted to about $10,000. Haughton told Haven, that Haughton and company would not be able to furnish business paper enough to meet these notes and to provide for their other wants; that these were accommodation notes, and that Healey ought to pay them. Haven said, if they had not business paper, he could give them further or extra accommodation, under this (Augustine Heard’s) guaranty, to enable them to pay these notes. Haughton expressed reluctaifee to doing so, for reasons stated, and Haven answered, emphatically, that these notes must be paid, if they were to go on; and would have to be paid, if they came to get accommodation at the bank. This was on the 14th or 16th of June. On Saturday, the 18th, Haughton came to the bank to get a discount of notes for about $3,500. Haven again told him, they could make the discount if Haughton and company were sure of going on and getting through; but told him, that the notes discounted for Healey were Haughton and company’s own notes, and wished him to take up the whole of them, and offered him a loan for that purpose, under the guaranty of Heard. Haughton made some objection, but acceded to a proposal, to take up two of these notes.
These two notes were coming due within a few days; the *465 others had a longer time to run. Haven told Haughton that the bank would lend him on the guaranty, on a demand note, or memorandum check, $4,036, sufficient to pay these two notes; the check to be secured by the guaranty. Haughton agreed thereupon to pay these two notes, one due on the 20th. the other on the 30th of June, this conversation being on the 18th of June. Haven states, that he then turned to the cashier Eldridge, Haughton agreeing, and told him, that Haughton would pay the two notes, and to make him the loan for that purpose of $4,036.
The business for that day was done with Mr. Eldridge the cashier, since deceased, and thereupon Haughton and company gave the following memorandum check: —
1297
2737
Memo. Merchants Bank, -
4036 dols. — cts. 4036
Boston, June 18, 1842
Pay to value rec’d,-or bearer,
(Two notes of like am’t end. by M. Healey, as collateral and guarantee of Aug. Heard,) —
Pom- thousand and thirty-six-dollars. 100
To the cashier. James Haughton & Co.
It further appeared, that this check was handed to the teller, as cash, and was not entered on the books of the bank, until Monday the 27th of June, after the failure of Haughton and company. The check was then taken from the teller and credited to him, and charged to loan account, with other loans, under the defendant’s guaranty. The two notes were retained in the bank, according to the intimation contained in the memorandum check; but Haven testified, that they were not retained by his direction, and that he did not know until afterwards, that they were retained; that he devolved the duty of giving up the notes to the cashier, who had charge of the col-laterals.
This is the substance of Haven’s testimony after a very extended examination.
Haughton in his testimony gives a somewhat different account of the transaction, especially what took place on the 18th of June, when the memorandum check was given; he *466 states that he assented to Haven’s proposal to give a memo, randum check for the first two notes, the notes to remain as collateral; that the papers were not then signed, but the matter was left to the cashier to prepare the papers ; that having obtained his discount he then went out, and at a later period in the forenoon went to the bank again, and in the cashier’s room signed the check, as prepared for him by the cashier, and left.
We should deem this discrepancy between the witnesses of more importance, if the contract of the parties was merely verbal, and rested on paroi proof. But as the contract was reduced to writing, and embodied in the memorandum check, signed by Haughton and company, and accepted by the bank, by their authorized officer and agent, we are to look to that to ascertain the contract of the parties.
It is for the plaintiffs, to make proof of a loan of money or discount made to Haughton and company, in order to charge the defendant on the terms of his guaranty. It is conceded, that he was not liable for the two notes signed by Haughton and company and discounted for Healey; the case of the plaintiffs proceeds on the assumption, that these notes were taken up and discharged, and that a new loan was made to Haughton and company; and they rely on the memorandum check as the obligation, security, and evidence of debt, on which that discount was made. They must then take the check as it is, with its provisions and limitations, as the final agreement in which the negotiations and verbal discussions terminated; and it is not competent for the parties to enlarge, alter, or vary the effect of it by paroi evidence. It is no answer, that it was taken by the cashier, who misunderstood the president, and did not take it according to the terms agreed on between him and Haughton. Nor is it competent for the president, or any other witness, to explain away the written evidence, and aver that by the term “ collateral ” in the check was intended collateral security for the benefit of Haughton and company. The word “ collateral ” is immediately followed by the words “ and guarantee of Augustine Heard,” which are conceded and claimed to be security for the bank. The in *467 strament is very brief, as such instruments usually are; and much meaning is conveyed in a few short and abbreviated words.
It is well understood, we suppose, in this community, that a memorandum check, though in the common form of a draft, is not intended as an order to be used for the purpose of drawing money from the bank named in it, but as a short due bill or note, payable on demand to the bearer, regarded as an acknowledgment of indebtedness, and a temporary security for money. Treating this check, then, as evidence of a loan or debt, we must read the two lines inclosed in a parenthesis as part of it, and we read it thus : “ Two notes of like amount, indorsed by Mark Healey, are to be held as collateral security for this debt, as also the guarantee of Augustine Heard.” The two notes are fully identified by the amount, the marks, and numbers, as the two notes, which Haven thought were paid. If the notes were to be considered as collateral to the check, or the check collateral to the two notes, then the notes were of course to be retained by the bank; and this is confirmed by the fact, that they were so retained.
The notes' were to remain as notes in force; otherwise they could give no security. If paid and taken up, or cancelled and annulled, by the promisors, or with their funds, both promisors and indorsers would be discharged. But if either promisors or indorsers were to remain liable, then the notes wer not paid. If the notes were not paid; if Haughton and company and the indorser were not discharged from the payment of them; then no money of theirs had been applied by the bank to their use; no money had been loaned on the check; and the check was not within the guaranty of the defendant.
But it is strongly urged, that the notes must be considered as paid, because they were so entered in the books of the bank, that Haughton might have taken them away if he would, and that they were left there by mistake. But this is inconsistent with the terms of the check; the check was merely handed to the teller, and not entered on the books, until after the failure of Haughton and company, The fact, that the notes were then entered in the books as paid, when the check was charged *468 as a loan, was probably rendered necessary by the mode of keeping the books of the bank; otherwise both the notes and the check would be entered in the books, as principal debts, which would be wrong. If the notes were to be held either as principal or collateral, Haughton and company would not have a right to take them. If the bank, in the first instance, took the check as cash, and it was held by the teller as cash, still it was but a contract in fact, and as such it must be taken as a whole, including the clause inserted under the hand of Haugh1on and company, authorizing the holding of the two notes as collateral security. With this agreement, they might undoubtedly be so held as between Haughton and company and the bank. Healey could not object; he was liable as indorser and was no party to the arrangement. The fact, that these notes remained with the bank and were not taken up, has a tendency to confirm the clause in the memorandum check, that the notes were to be held as security.
It is to be considered, that the contract of the defendan was that of a guarantor and surety, and in its construction, . cannot be carried beyond its plain terms and its fair intent and meaning. Glyn v. Hertel, 8 Taunt. 208; Evans v. Whyle, 5 Bing. 485; Commercial Bank of Albany v. Eddy, 7 Met. 181. Further, the defendant’s undertaking to the bank was to guarantee the payment of all money, which should become due to the bank, by reason of any loan or discount, made to Haughton and company, or for their benefit. If the memorandum check was taken in discharge of a preexisting debt, not covered by the guaranty, although the notes were intended to be given up, or had been in fact given up, it is very questionable, whether this would be a loan of money, within the meaning of the guaranty, and of the rules of law applicable to this contract; though we do not think it necessary to decide this case on that ground. Wright v. Johnson, 8 Wend. 512. And it is quite certain, that the expectation and intent of the parties, that the check should be deemed to come under the guaranty of the defendant, could have no effect to bring it under the guaranty, if by the terms of the guaranty, it would not have applied to such a transaction, without regard to such intent.
*469 We have no reason to believe, that when this transaction took place, Haven or Haughton had reason to suppose that Haughton and company were expected to fail, although they did fail very soon. The evidence, we think, disproves such expectation. We have no doubt, that the liability of Haughton and company to pay the notes in question, discounted for Healey, whether accommodation notes or exchange notes, constituted an exigency in their business, which would well warrant them in borrowing money of the bank, by a loan or discount, to which this guaranty, by its terms and legal effect, would have attached; although it is questionable whether, if Haughton and company had expected immediately to fail, it would have been honorable in them so to borrow, and as questionable on the evidence whether they would have done so.
A loan of money to them by the bank, to pay an existing lebt, either to the bank itself, or to a third person, and the actual payment of such preexisting debt, with the money bar-" rowed, would have been within the guaranty; nor do we think it was necessary, that the money should be either handed over to Haughton and company, or so placed to their credit that they might have applied it to some other purpose, and this is not the true test of a loan. But upon the evidence in this case, the court are of opinion, that the transaction did not bear the character of a loan of money or discount, because the check was given either as a substitute for a preexisting debt, or, what in our view, is still stronger, and the ground of this decision, the notes were not taken up, cancelled, or destroyed, but were retained as contracts still in force, by the bank; and of course no money was advanced or applied by the bank to the use of Haughton and company.

Judgment for the defendant